## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| THE GINTHER TRUSTS | § | |
| A TEXAS JOINT VENTURE, | § | CASE NO. 98-32663-H4-11 |
| Debtor | § | Chapter 11 |
| | § | |
| LISA LEE DE MONTAIGU | § | |
| LIQUIDATING TRUSTEE, | § | |
| Plaintiffs | § | Adversary No. 04-3944 |
| | § | |
| v. | § | |
| | § | |
| NOBLE C. GINTHER, JR., STUART | § | |
| DOUGLAS FERRELL, EDMOND L. | § | |
| GINTHER, MARILYN GINTHER ORR, | § | |
| FERGUS M. GINTHER and ADRIANA | § | |
| GINTHER | § | |
| Defendants | § | |

## MEMORANDUM OPINION ON: (A) FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT FILED BY LIQUIDATING TRUSTEE; (B) COUNTERCLAIM FOR DECLARATORY RELIEF AND CROSS-CLAIM FOR DAMAGES, AND MOTION FOR PARTIAL SUMMARY JUDGMENT FILED BY FERGUS M. GINTHER; (C) COUNTERCLAIM FOR DECLARATORY RELIEF AND MOTION FOR SUMMARY JUDGMENT FILED BY EDMOND L. GINTHER AND MARILYN GINTHER EAGLE; AND (D) COUNTERCLAIM FILED BY STUART DOUGLAS FERRELL AND NOBLE C. GINTHER

The above-referenced adversary proceeding in this post-confirmation Chapter 11 case was filed to resolve a dispute over the distribution of funds from a liquidating trust (the Liquidating Trust) to Noble C. Ginther, Jr. (Noble Jr.), Edmund L. Ginther (Pat), Marilyn Ginther Orr, now Eagle (Marilyn), and Fergus M. Ginther (Fergus). The central question concerns the validity of a post-confirmation settlement agreement (the Settlement Agreement) regarding a rearrangement of the distribution rights of Noble Jr., Pat, Marilyn, and Fergus (the Class 6 Members) under the confirmed Second Amended Ginther Plan of Reorganization (the Plan).

The parties seek various forms of relief. Plaintiff Lisa Lee de Montaigu, in her capacity as the liquidating trustee (the Trustee), requests a declaration of which remaining assets Fergus is entitled to and how to calculate and disburse the proceeds from the liquidation of these assets.  Fergus asks this Court to hold that the Settlement Agreement did not modify the Plan, and that his portion of the remaining Liquidating Trust assets is therefore unchanged by the Settlement Agreement. Pat and Marilyn argue that Fergus's entitlements are changed by the Settlement Agreement, but they ask specifically for this Court to reject Fergus's interpretation of the Settlement Agreement and to decide Fergus's rights according to the Settlement Agreement's plain language. This Court holds that the Plan was substantially consummated at the time of the execution of the Settlement Agreement, and that the Settlement Agreement attempted to modify the Plan in violation of 11 U.S.C. § 1127(b).   The Settlement Agreement is therefore unenforceable.  Only the Plan provisions govern how to calculate the amounts owed to the parties and when the Trustee shall distribute the funds.  It is no small irony that even though this Court rejects Fergus's argument that the Settlement Agreement did not modify the Plan, this Court's ruling actually grants some of the relief which Fergus seeks.  This Memorandum Opinion explains why this is so.

## I.  FINDINGS OF FACT

1. Noble Ginther, Sr. (Noble Sr.) died in 1989.  He was the husband of Minnie and father of Noble Jr., Pat, Marilyn, and Fergus.  In April 1989, Noble Sr. and his wife executed reciprocal wills that distributed certain assets through trusts created under the Fifth Amended and Restated Revocable Trust Agreement.

2. In April 1989, Noble Sr. and Minnie, as grantors, executed the GST Trust Agreement.

3. Almost nine years later, on March 11, 1998, the Revocable and GST Trusts (the Ginther Trusts) filed a Chapter 11 petition to avoid pending judgments against Ginther family property located in Houston and held by one or another of the Ginther Trusts.   The Ginther Trusts were characterized as a joint venture and were able to establish debtor status under 11 U.S.C. § 109(d).

4. In 1999, Minnie Ginther passed away.  At the time of Minnie's death, all four of Noble Sr.'s children had taken advancements on their father's estate.  The reciprocal wills provided that the final distribution made to each child would be less 8% simple interest accrued annually against any advancement from the time the advancement was made to the time of the last spouse's death.

5. The Plan was filed with this Court on April 20, 2001, and it was confirmed on May 10, 2001.  The order confirming the Plan was also entered on the docket on May 10, 2001. (Case Docket Nos. 404 and 417).

6. The Plan provided for payment to eleven classes of creditors/beneficiaries based on priority.  Section 4.6 of the Plan describes payments to be made to Classes 6 and 7.  The four children of Noble Sr. (Noble Jr., Pat, Marilyn, and Fergus) are the only Class 6 Members, and their children (Noble Sr.'s grandchildren) solely comprise the members of Class 7 (the Class 7 Members).

7. Plan Section 4.6 identifies a prioritized schedule for making payments to the members of classes 6 and 7.  The first two distributions in the schedule are: (a) a payment of $400,000 to each Class 6 Member; and (b) payment to Class 7 Members in the total amount of $1.2 million.  The next three disbursements under the schedule, (c) through (e), are advancements to Noble Jr., Pat, and Marilyn.  Because all four Class 6 Members had taken early advancements (prior to their parents' deaths) in uneven amounts, these distributions were designed to equalize the gifts to all Class 6 Members.  The distribution under (f) is another $800,000 to the Class 7 Members.  The final payment under the schedule, (g), is a disbursement of all assets remaining in the Liquidating Trust to Class 6 members in equal amounts.

8. The Plan includes a liquidating trust agreement which created a liquidating trust (the Liquidating Trust).  The Liquidating Trust consolidated assets from the Ginther Trusts in order to pay all claims and distributions.  The Trustee, Lisa Lee de Montaigu, is the daughter of Fergus and, on December 4, 2001, she was appointed the trustee of the Liquidating Trust through the Liquidating Trust Agreement.

9. At its inception, the Liquidating Trust held roughly $1.25 million in unliquidated assets. The majority of this amount consisted of a fractional interest in a property called the El Dorado Ranch. The balance of the Liquidating Trust included an interest in a claim against Bank of America.

10. The Trustee filed a motion with this Court on April 24, 2002 entitled Second Motion to Modify Second Amended Ginther Plan of Reorganization, Dated April 20, 2001 and for Approval of Compromise (the Second Motion to Modify and Compromise). This pleading requested both modification of the Plan and approval of the terms of a compromise, which included payments to Fergus. Fergus had been prosecuting several claims against the Ginther Trusts in various courts. The compromise was intended to allow the Liquidating Trust to settle all claims with Fergus in exchange for one payment of $500,000 to him and also an early advance to Fergus of his $400,000 under § 4.6(a) of the Plan. (Case Docket No. 714).

11. On June 3, 2002, a hearing was held before the Honorable William Greendyke (Judge Greendyke). The Trustee and Fergus argued in favor of a proposed order that would (1) approve certain compromises between the Trustee and Fergus; and (2) modify some provisions of the Plan. At the hearing, Judge Greendyke requested legal authority that would support modifying the Plan at that stage. None was offered at the hearing.[1]

12. On June 5, 2002, Judge Greendyke signed an order approving the terms of compromise, but not the terms of modification (the Order). Indeed, at the bottom of the first page of the Order, he wrote in language expressly refusing to approve the proposed modifications of the Plan and stating that the Plan could not be further modified or amended. In a hand-written footnote, Judge Greendyke stated that although the Court would not modify the Plan under 11 U.S.C. § 1127, such refusal was "without prejudice to any agreement between

---

[1] A transcript of the hearing is filed at Docket No. 66, Attachment 2, Exhibit 9. Judge Greendyke asked several times for legal authorities that he could rely upon to modify the Plan when it had been substantially consummated. The attorneys gave none at the hearing, and Judge Greendyke asked them to research the issue further and return their findings to him. As he did not approve the modifications to the Plan and altered the proposed order accordingly, this Court presumes today that none of the parties ever provided him with any legal authority.

the parties or any other requested relief under state or federal law." (Case Docket No. 725)[2]

13. At the time Judge Greendyke signed the Order, most of the distributions under the Plan had been made except for those to Classes 6 and 7, and all distributions that had not been made were to be made with the remaining liquidated or unliquidated estate assets.

14. On June 5, 2002, the Class 6 Members signed the Settlement Agreement to achieve the terms set forth in the Second Motion to Modify and Compromise. According to its terms, once Fergus received his payment of $400,000 due under Section 4.6 of the Plan, he would relinquish any additional distributions due to him as a Class 6 Member.  Fergus, however, would retain a 25% interest in the pending claim against Bank of America.

15. The Settlement Agreement itself was not docketed.   However, it was introduced into evidence on June 3, 2005 in Adversary Docket No. 57, as Attachment 1, Exhibit C.

16. The Bank of America (formerly NationsBank) claim was mediated and resulted in a $6.29 million settlement (the Bank of America Settlement) on March 25, 2004.  After litigation expenses and fees, the Liquidating Trust netted $3.7 million from the Bank of America proceeds.  These funds were used to satisfy the remaining Class 6 and Class 7 distributions through § 4.6(f) of the Plan.  The amount of Bank of America proceeds now remaining in the Liquidating Trust totals $364,549.32.

17. Fergus was then allotted $91,137.33 (25%) of the remaining $364,549.32. Fergus contends that this amount is incorrect.  He argues that the Bank of America proceeds should not have been used to pay out distributions for Classes 6 and 7 until all other assets of the Liquidating Trust had been liquidated and the sales proceeds had been disbursed.   The remaining unliquidated assets include several oil and gas properties and some acreage in the El Dorado Ranch.

---

[2] A true and correct copy of the Order is attached hereto.

18. On December 9, 2004, the Trustee filed a Complaint for Declaratory Judgment requesting this Court to define the appropriate distribution under § 4.6(g) of the Plan. (Case Docket No. 845).   Neither the Plan nor the Settlement Agreement contains a provision expressly setting forth the order in which the Liquidating Trust's assets are to be sold for payment of the Class 6 claims.   Thus, the Trustee asks this Court to determine how the Bank of America proceeds and the unliquidated assets are to be used in making disbursements to the Class 6 Members.

## II.  CONCLUSIONS OF LAW

1.   **Judge Greendyke's Order of June 5, 2002 approved certain compromises requested in the Second Motion to Modify and Compromise.**

On June 3, 2002, both the Trustee and Fergus appeared before Judge Greendyke with a proposed modification of the Plan.  Two days later, when Judge Greendyke signed the proposed order, he added to and changed some of the language.  With Judge Greendyke's alterations, the first paragraph read as follows:

> "1.  The Second Amended Ginther Plan of Reorganization, dated April 20, 2001, as modified by the Order, dated October 15, 2001, *may not be* further modified *or* amended as set forth in the Second Modification to Second Amended Ginther Plan of Reorganization filed in this Court on April 24, 2002 (the "Plan");* ~~A copy of the Second Modification is attached hereto~~;WG,3

(Judge Greendyke's additions in italics). (Case Docket No. 725).  At the bottom of the page, Judge Greendyke expressly added this language: "Court declines to 'modify' under § 1127; however, this is without prejudice to any agreement between parties or any other requested relief under state or other federal law." (Docket No. 66 Attachment 2 Ex. 7).

A plan of liquidation under Chapter 11 may be modified "after confirmation of such plan and before substantial consummation of such plan."  11 U.S.C. § 1127(b).  Judge Greendyke's changes to the proposed order as incorporated into the Order make it clear that in his view—as of April 24, 2002, the date of the filing of the Second Motion to

---

[3] The italicized words and the asterisk were added by Judge Greendyke.  The asterisk directed readers to his hand-written footnote at the bottom of the first page where he expressly refused to allow modification of the Plan. Judge Greendyke struck the last sentence and initialed it.   He allowed the compromises in the Order, but not the attachment of modifications. Attached is a true and correct copy of the Order.

Modify and Compromise—the Plan had been substantially consummated; and, therefore, he would not consent to modification.

In the Order, Judge Greendyke approved several compromises that were designed to clear away some of the litigation hurdles to implementation of the Plan. These compromises included the Trustee paying $500,000 to Fergus and withdrawing sanctions sought by both the Trustee and Redstone El Dorado Acquisition, L.P. against Fergus. In exchange, Fergus promised to seek dismissal or withdrawal with prejudice of no less than seven causes of action and three proofs of claim against the Liquidating Trust. The Order further required Fergus to relinquish his interest in two pieces of real estate to the Liquidating Trust and to sever his suit from the Liquidating Trust's suit against Bank of America. Finally, Fergus received an early disbursement of $400,000 under the Plan. These compromises are authorized in the Liquidating Trust, which provides in § 5.2(vi) that the Trustee is empowered "to assert, prosecute, litigate, compromise, and settle claims and causes of action included within the trust estate." Based on that power, none of the items in the Order is a modification of the Plan, and therefore nothing in the Order violates 11 U.S.C. § 1127(b).

**2.      The Settlement Agreement is unenforceable.**

      **a.      The Settlement Agreement violated 11 U.S.C. § 1127(b).**

The Settlement Agreement signed by the Class 6 Members violates 11 U.S.C. § 1127(b) because the Plan was substantially consummated prior to the execution of the Settlement Agreement. The Plan was filed on April 20, 2001 and confirmed in compliance with 11 U.S.C. § 1129 on May 10, 2001. The Plan was successfully modified pursuant to 11 U.S.C. § 1127(b) on October 16, 2001. (See 6 and 11, above). The Second Motion to Modify and Compromise was filed on April 24, 2002, and it was granted in part and denied in part by Judge Greendyke on June 5, 2002. Judge Greendyke approved the proposed compromises, but expressly disapproved of the proposed modifications. He denied the modifications because he believed the Plan was substantially consummated as defined by 11 U.S.C. § 1101(2). Although he asked the parties to give legal support for their arguments so that he could approve the modifications that all parties found acceptable, none offered any support.

A plan is substantially consummated when: (1) all or substantially all of the property proposed to be transferred by the plan is transferred; (2) the debtor or debtor's successor assumes all or substantially all of the property dealt with by the plan; and (3) distribution under the plan has commenced. 11 U.S.C. § 1101(2).  A bankruptcy court determines on a case by case basis whether a plan is substantially consummated.  *In re U. S. Brass Corp,* 255 B.R. 189 (E.D. Tex. 2000) (citing *In re Stevenson,* 148 B.R. 592, 596 (D. Idaho 1992).  In *U.S. Brass*, the plan was found to be substantially consummated because secured claims were paid and payments to unsecured creditors had commenced.  *Id.* at 194.

Similar to *U.S Brass*, the distributions from the Liquidating Trust in the case at bar have commenced.  In fact, at the time the Settlement Agreement was executed, most of the eleven creditor classes in the distribution ladder had been paid. Indeed, virtually all the unsecured claims against the Liquidating Trust had been paid except for Fergus's disputed NuCorp Claim, which settled for $500,000.

With the assets of the Chapter 11 estate having been transferred to the Liquidating Trust, with the Trustee having been appointed and having already made distributions, with distributions under the Plan nearly complete at the time of the Settlement Agreement, and with Judge Greendyke having refused to allow modification of the Plan under 11 U.S.C. § 1127(b), this Court concludes that as of June 5, 2002, the Plan was substantially consummated and therefore not modifiable.

**b.    The Settlement Agreement was a modification of the Plan in certain respects.**

The table below sets out the differences among the Second Motion to Modify and Compromise, the Order, and the Settlement Agreement (which contains the provisions Judge Greendyke expressly refused to approve in the Order):

| | The Second Motion to Modify | Judge Greendyke's Order | The Settlement Agreement |
|---|---|---|---|
| **Plan Article 4.6 Distribution of $400K to Fergus** | Not addressed | *Liquidating Trustee to pay $400K to Fergus, with remaining Class 6 Members waiving right to receive $400K up front | *Liquidating Trustee agreed to pay $400K to Fergus |
| **Fergus's Class 3 Claim** | *Liquidating Trustee agreed to settle $500K Class 3 claim with Fergus | *Liquidating Trustee to pay $500K to Fergus | Not addressed |
| **Class 6 Members** | **Plan modified to change Fergus's distribution* | Not addressed | **Fergus waived any other class 6 distribution besides the $400k* |
| **Fergus's Claims Against Ginther Trust** | *Fergus agreed to withdraw or dismiss all his suits against liquidating trust | *Fergus to dismiss and withdraw suits against Liquidating Trust | not addressed |
| **Liquidating Trustee's Sanctions Against Fergus** | *Liquidating Trustee agreed to withdraw sanctions against Fergus | *Liquidating Trustee to withdraw and dismiss sanctions against Fergus | Not addressed |
| **Trust Advisory Committee** | **Fergus no longer a member of the Trust Advisory Committee* | Not addressed | **Fergus agreed to resign from Trust Advisory Committee* |
| **El Dorado Property** | *Fergus agreed to convey his interest in El Dorado Country Club to the Trust | *Fergus to convey interest in land to Liquidating Trust | Not addressed |
| **Bank of America Settlement** | *Fergus and Liquidating Trustee agreed to arbitration if they disagree about settlement offered by Bank of America | *Fergus to file motion and proposed order to dismiss or withdraw suits against estate and Trustee in Bank of America suit | **Fergus agreed to accept 25% of remaining Bank of America settlement after Class 6 and Class 7 distributions are finished* |
| **Fergus's Claims Against Bank of America, Other Class 6 Members or Liquidating Trust** | Not addressed | *Fergus to file motion seeking severance and separate trial for all individual claims against Bank of America and against Noble, Marilyn, Pat, or Liquidating Trust | Not addressed |
| **Liquidating Trustee's Claims Against Fergus** | Not addressed | *Liquidating Trustee to withdraw any claim against Fergus | Not addressed |
| **Procedural Matters** | Not addressed | *Court granted Fergus leave to vote for the Plan | Not addressed |

\* Allowed because it is (1) a compromise within Liquidating Trust Agreement § 5.2(vi)[4]; or (2) otherwise not a
    material modification of the plan.

\*\*Disallowed because it materially modified the Plan.

---

[4] Adversary Docket No. 66, Exhibit 4

The italicized passages in the table above would be modifications to the Plan. This table underscores Judge Greendyke's refusal to approve the Class 6 Members' attempts to: (1) change Fergus's distribution as a member of the Class 6 creditors; (2) remove Fergus from the Trust Advisory Committee; and (3) reduce Fergus's final distribution from ¼ of all remaining assets after all other distributions had been made to ¼ of only the remaining proceeds from the Bank of America Settlement. The unapproved changes appear in the Settlement Agreement along with an agreement about the settlement of the Bank of America suit. Because the Plan had been substantially consummated, the issue is whether the removal of Fergus from Class 6 and from the Trust Advisory Committee, and the decision to give Fergus 25% of only the Bank of America settlement, are modifications of the Plan and therefore prohibited by 11 U.S.C. § 1127(b).

Fergus contends that the Settlement Agreement did not modify the Plan because the purpose of the Settlement Agreement was to effectuate the Plan. However, the Settlement Agreement is not merely administrative: it affects the substantive rights of all of the Class 6 Members of the Plan. A plan is a contract between a debtor and its creditors. *In re Berryman Products, Inc.*, 183 B.R. 463, 467 (N.D. Tex. 1995). As such, it is subject to contract analysis. *See, e.g., Id* (analyzing party's failure to object to an issue before confirmation in terms of contract); *In re Hoffinger Industries, Inc.*, 321 B.R. 498, 511 (Bankr.E.D. Ark. 2005) (analyzing the meaning of plan provisions in terms of contract); *In re Coram Healthcare Corp.*, 315 B.R. 321, 336 (Bankr. D. Del. 2004) (discussing the binding nature of plan on those who vote for it in terms of contract acceptance); *In re Hunter*, 144 B.R. 871, 874 (Bankr. D.S.D. 1992) ("A Plan is a contract consisting of a novation of the previous agreements between the parties").

In order to be a modification of the contract, a change needs to be material. "The cases in which courts find modifications to be material under Texas law generally involve significant increases in a party's financial obligation or exposure or in a party's duties under a proposed contract." *Hollywood Fantasy Corp. v. Gabor,* 151 F.3d 203, 208 (5th Cir. 1998). "Texas cases finding modifications not material generally involve changes that do not significantly alter the obligations or exposures under a contract." *Id.* (referencing *Hoyt R. Matise Co. v. Zurn,* 754 F.2d 560, 566 (5th Cir. 1985) (a buyer's

modification of a real estate contract to require the seller to provide the buyer with various documents six days earlier than originally stated was not a material modification).

Under the Settlement Agreement, Fergus is no longer a Class 6 Member; yet Marilyn, Pat, and Noble are.  This is a significant change of position and a material modification of the Plan.   Fergus's position that the Settlement Agreement merely facilitated consummation of the Plan also contradicts the plain language in paragraphs 1 and 5 of the Settlement Agreement. Paragraph 1 states that the Settlement Agreement "contemplates, inter alia, certain amendments to the Plan (the "Modifications")."  (Adversary Docket No. 66 Attachment 2 Exhibit 8).  Similarly, paragraph 5 says:

> Whereas Marilyn, Pat, Noble and Fergus desire to enter this Agreement as the sole members of Class 6 under the Plan *to effectuate and adopt the Modifications* as an agreement of the member [sic] of Class 6.

(emphasis added).

The following chart indicates how the modifications in the Settlement Agreement affect the disbursements of the Bank of America proceeds to Noble, Pat, Marilyn, and Fergus:

| Plan ¶ | Distributions to Class 6 Members under the Plan | Distributions to Class 6 Members (excluding Fergus) under the Settlement Agreement | Distributions to Fergus under the Settlement Agreement |
|---|---|---|---|
| 4.6(g)* | ¼ remainder (currently estimated at $403,000/ sibling) | 1/3 remainder (currently estimated at $508,000/ sibling) | $91,000 (25% of remainder of the Bank of America settlement) |

\* Estimate based on approximate figure provided by the Trustee.

The Plan contemplated equal shares of money for each of the four siblings, and under the Settlement Agreement this is not what they receive; rather, with respect to the final

distribution, Fergus receives only $91,000 while the other three siblings each receive $508,000. Therefore, because the Settlement Agreement creates a material change in financial position, the Settlement Agreement unquestionably modifies the Plan.

Fergus's siblings contend that the Settlement Agreement affected "a re-arrangement of their rights of distribution," but did not modify the Plan. Edmund L. Ginther and Marilyn Ginther Eagle's Mot. Summ. J. (Adversary Docket No. 58). This Court fails to discern a distinction between a "re-arrangement" and a "modification." Rather, this Court finds that a "re-arrangement" of rights of distribution which leads to a significant change in financial position of the affected parties does indeed qualify as a modification of the Plan. This Court will therefore not enforce the provisions of this Settlement Agreement.

Even though the Class 6 Members are the last to receive disbursements under the Plan, their claims are still a part of the Plan. The fact that Class 6 and Class 7 members were the only remaining distributees awaiting disbursements underscores that the Plan was substantially consummated at the time the Settlement Agreement was executed.

Contrary to the Class 6 Members' assertions, Judge Greendyke did not condone making an agreement to modify the Plan in violation of the Bankruptcy Code. Reliance on Judge Greendyke's hand-written comment that "any agreement" is enforceable is without merit. Implicit in his refusal to modify the Plan under 11 U.S.C. § 1127(b) is the notion that any such agreement would *not* be enforceable if it violated the Bankruptcy Code. *See In re Rickel & Assocs., Inc.*, 260 B.R. 673 (S.D.N.Y. 2001) (holding that neither plan nor confirmation order could be modified to change the rights of parties after substantial consummation).

The Class 6 Members other than Fergus contend that if the Settlement Agreement is not enforced as written, Fergus will be enriched by $500,000, and they will have received nothing in return. There are three flaws in this argument. First, they forget that the $500,000 was paid to Fergus in exchange for an end to certain litigation in which Fergus might have prevailed. Moreover, this litigation, even if Fergus had lost, could have resulted in a much smaller remainder in the Liquidating Trust to be disbursed to them due to the Trust's need to use monies for paying attorneys' fees and expenses in defending against Fergus. The exchange of money for an end to lawsuits was part of a lawful agreement based on the Trustee's powers under the Liquidating Trust to compromise

claims and causes of action.   Second, by entering into the Settlement Agreement, the Class 6 Members were taking a risk.   Judge Greendyke specifically told them that a substantially consummated plan could not be modified; and that the Plan was, in his view, substantially consummated.   Nevertheless, they signed an agreement which flew directly in the face of Judge Greendyke's ruling.   They took a risk, and now that a dispute has broken out over the order in which the assets are to be liquidated and which sales proceeds should be used to pay claims, they are suffering the consequences of having done what Judge Greendyke told them not to do.   Finally, although Judge Greendyke signed the Order, which approved various compromises but did not modify the Plan, none of the parties-in-interest objected based on their acceptance of the compromise being contingent on the Court's acceptance of the modifications.   They have, therefore, waived their right to complain three years later when a dispute among the signatories to the Settlement Agreement has occurred.

This Court holds that because portions of the Settlement Agreement materially changed the status of and distributions to Class 6 Members under the Plan, they were material modifications.   Because these material modifications came after substantial consummation of the Plan, they are unenforceable under 11 U.S.C. § 1127(b).

      **c.**      **The law of illegal contract in Texas also renders the Settlement Agreement unenforceable.**

Section 12.4 of the Plan provides: "Except to the extent the Bankruptcy Code or the Bankruptcy Rules are applicable, the rights and obligations arising under the plan shall be governed by, and construed and enforced in accordance with the laws of the State of Texas."   In Texas, "[w]here a contract is made in violation of a statute, it is illegal and void." *Richmond Printing v. Port of Houston Authority*, 996 S.W.2d 220, 224 (Tex. App.—Houston [14th Dist.] 1999).   Because the Plan was substantially consummated and the Settlement Agreement modified the Plan, the Settlement Agreement was in violation of 11 U.S.C. § 1127(b), and is therefore illegal and void under Texas law.

## III. CONCLUSION

The Second Amended Ginther Plan of Reorganization and the Settlement Agreement are contracts governed by certain provisions in Chapter 11 of the Bankruptcy Code and

by state law.  *See* 11 U.S.C. 1121-46; *Hoffinger*, 321 B.R. at 511-12; *In re Home and Hearth Plano Parkway, L.P.*, 320 B.R. 596, 607-08 (Bankr. N.D. Tex. 2004) (discussing bankruptcy plans, contracts, and the application of state and federal law to each).  The Code specifically sets forth circumstances under which a plan may be modified.  § 1127(b) states that if a plan has been substantially consummated, then it may not be materially modified as the Class 6 Members have tried to do.  In the Order, Judge Greendyke expressly refused to modify the Plan.  Although he gave the parties leave to come to an agreement, it was *at their own risk* and with knowledge that they did not have leave to violate any law. Nevertheless, they entered into an agreement to do exactly the things Judge Greendyke expressly did not allow; namely, changing the status of Fergus as a Class 6 Member and altering the distribution schedule.

Allowing modification of a substantially consummated plan would eliminate the sense of finality in, and the ability to, bring closure to a bankruptcy case.  Indeed, "[b]ecause of the delicacy of the reorganization process, modifications should be allowed after confirmation only in extreme circumstances." *In re A. J. Mackay Co.*, 50 B.R. 756 (D. Utah 1985).  The conflict among the parties that has arisen in this case is the very sort of problem which the rule prohibiting modification after substantial consummation is meant to prevent.  This Court will not now enforce a contract with provisions identical to those contained in the Second Motion to Modify and Compromise, which was properly denied by Judge Greendyke.

Fergus has argued that approximately $3,000,000 of net proceeds from the Bank of America settlement were wrongfully distributed without consideration of his interest in such proceeds under the terms of the Settlement Agreement.  Since the Settlement Agreement is unenforceable as void, its terms do not apply and Fergus is to be treated equally with the other Class 6 Members.  Consequently, his argument fails and this Court finds that Fergus has no claim, apart from his status as a Class 6 Member, in any funds from the Liquidating Trust which were previously distributed in accordance with the Plan.  Finally, based upon this finding, Fergus' cross-claim against  Stuart Douglas Ferrell is without merit.

For the foregoing reasons, this Court holds as follows: (1) Fergus continues to be a Class 6 Member under the Plan; (2) The Trustee must treat Fergus as such for the

purposes of the final disbursement under § 4.6(g) of the Plan; (3) Fergus is entitled to retain the $500,000 he received as a compromise of the NuCorp claim because this exchange constitutes a legally enforceable compromise of a claim; and (4) The Settlement Agreement is void and all requests for relief relying on the validity of the Settlement Agreement are without merit and therefore denied.

This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law[5] pursuant to FED. R. CIV. P. 52, as incorporated into adversary proceedings in bankruptcy cases by FED. R. BANKR. P. 7052.  The Court will issue a separate order consistent with this Memorandum Opinion.

SIGNED this 21st day of July, 2005.

                                        Jeff Bohm
                                        United States Bankruptcy Judge

---

[5] To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent that any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The Court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.

United States Courts
Southern District of Texas
ENTERED

JUN 0 5 2002

Michael N. Milby, Clerk of Court

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

IN RE:

| | | |
|---|---|---|
| THE GINTHER TRUSTS, | § | CASE NO. 98-32663-H4-11 |
| A TEXAS JOINT VENTURE | § | (CHAPTER 11) |
| | § | |
| Debtor | § | |

STIPULATIONS AND ORDER FOR APPROVAL OF MODIFICATION OF
SECOND AMENDED GINTHER PLAN OF REORGANIZATION AND
OF COMPROMISE WITH FERGUS M. GINTHER, SR.

In Houston, came on for hearing the Second Motion of Lisa Lee de Montaigu, Liquidating Trustee to Modify Second Amended Ginther Plan of Reorganization, dated April 20, 2001 and For Approval of Compromise (the "Motion"); and it appearing to the Court that notice of the Motion was *as stated below,* adequate and upon evidence and argument presented that the Motion should be granted, it is therefore ORDERED:

1.    the Second Amended Ginther Plan of Reorganization, dated April 20, 2001, as modified by the Order, dated October 15, 2001, *may not be* further modified and amended as set forth in the Second Modification to Second Amended Ginther Plan of Reorganization filed in this Court on April 24, 2002 (the "Plan"); *A copy of the Second Modification is attached hereto;*

2.    as provided in these Stipulations and Order the compromise by and between Lisa Lee de Montaigu, Liquidating Trustee ("Liquidating Trustee") and Fergus M. Ginther, Sr., aka Fergus M. Ginther ("Fergus") and Adriana N. Ginther ("Adriana") is hereby approved and Liquidating Trustee is hereby authorized to consummate such compromise;

3.    after the entry of this Order on a date to which Liquidating Trustee and Fergus mutually agree (the "Closing Date") Liquidating Trustee shall pay $500,000.00 to Fergus and Adriana or their designee from the Unsecured Creditors' Fund under the Plan;

4.    on the Closing Date Fergus shall file a motion and proposed order in a form approved by Liquidating Trustee, seeking the immediate dismissal or withdrawal with prejudice, any and all of his claims, objections and/or grounds for relief in or for each of the following:

a.    Fergus M. Ginther v. The Unsecured Creditors' Committee and The Ginther Trusts,

7/4

* Court declines to "modify" under §1127; however, this is without prejudice to any agreement between parties or any other requested relief under state or other federal law. (WG)

EXHIBIT
7

A Texas Joint Venture, Civil Action No. H-01-1960-CV, in the United States District Court for the Southern District of Texas, Houston Division

b.      Fergus M. Ginther v. Advent Trust Company and The Ginther Trusts, A Texas Joint Venture, Civil Action No. H-02-0685-CV, in the United States District Court for the Southern District of Texas, Houston Division.

c.      Fergus M. Ginther and Adriana N. Ginther v. The Ginther Trusts, A Texas Joint Venture and Redstone El Dorado Acquisition, L.P., Civil Action No. H-00-1295-CV, in the United States District Court for the Southern District of Texas, Houston Division (the "Redstone Action")

d.      The Matter of Two Trust Groups Established by Noble C. Ginther, Sr. and Minnie L. Ginther in the Probate Court Number 1 of Harris County, Texas, Cause No. 322916;

e.      Proof of Claim, dated May 30, 2001, in the amount of $1,900,000.00 (Claim #16);   not in record

f.      Proof of Claim, dated June 11, 2001, in the amount of $120,000.00 (Claim # 39);   not in record

g.      Proof of Claim of NuCorp, Inc., dated July 16, 1998, in the amount of $6,000,000.00   #98-32003 (Claim #7).

5.      on the Closing Date Fergus shall file a motion (or other appropriate writing) and a proposed order in a form approved by Trustee, seeking the dismissal or withdrawal with prejudice in the cause styled and numbered: Advent Trust Company v. NationsBank, N.A., Cause No. 231,749-407, pending in the Probate Court No. 3 of Harris County, Texas, of the following:

a.      any request to appoint Lisa Lee de Montaigu as the executor of the probate estate of Noble C. Ginther, Sr.;

b.      any request to compel arbitration with any representative of the probate estate of Noble C. Ginther, Sr.; and

c.      any request for relief against Liquidating Trustee, Lisa Lee de Montaigu, and against any trust or probate estate (or its representative) described in Paragraph 12 of this Order.

6.      on the Closing Date Liquidating Trustee shall file a motion and proposed order in a form approved by Fergus, seeking the immediate withdrawal of the sanctions sought against Fergus and his counsel under Rule 9011 in this case.  On the Closing Date or as soon as practical thereafter, Liquidating Trustee will use her best efforts to persuade Redstone El Dorado Acquisition, L.P. to seek to the vacation of the order in the Redstone Action sanctioning Fergus and his counsel;

7.      on the Closing Date Liquidating Trustee shall pay $400,000.00 to Fergus or his designee from the Residual Fund under the first priority Section 4.6 of the Plan.  To the extent necessary because of the lack of available funds, the members of Class 6A under the Plan shall waive their respective right to receive on the Closing Date a distribution equal to such distribution to Fergus;

8.      on the Closing Date Fergus and Adriana shall execute and deliver to Liquidating Trustee a general warranty deed in a form approved by Liquidating Trustee, conveying all of their respective interests in or to the following real properties to the Liquidating Trust:

> 367.414 acres in Harris County, Texas, comprised of two tracts, Tract A containing 366.24 acres, and Tract B containing 1.174 acres, said 367.414 acres being the remainder of that certain 2004.1534 acre tract (described as Tract One) in that certain Trustee's Deed recorded under Harris County Clerk's File No. M393931, in the Official Public Records of Real Property of Harris County, Texas.

9.      on the Closing Date Fergus shall file a motion and proposed order in a form approved by Liquidating Trustee, seeking the immediate severance and separate trial for any and all of his individual claims against NationsBank, N.A. or its successor in the cause styled and numbered: Advent Trust Company v. NationsBank, N.A., Cause No. 231,749-407, pending in the Probate Court No. 3 of Harris County, Texas.  In the event that (i) NationsBank, N.A. or its successor makes an offer of settlement to Fergus and Liquidating Trustee which is conditioned upon the joint acceptance of such offer by Fergus and Liquidating Trustee and that (ii) a dispute or disagreement arises between Fergus and Liquidating Trustee regarding any matter which prohibits Fergus and Liquidating Trustee from (a) jointly accepting such offer, (b) jointly rejecting such offer and/or (c) jointly making a counter-offer in response to such offer, then Fergus and Liquidating Trustee shall submit such dispute or disagreement to Alvin L. Zimmerman for binding arbitration pursuant to the Commercial Arbitration Rules of the American Arbitration Association.  Fergus and Liquidating Trustee shall each pay 50.0% of the fees and expenses charged by Alvin L. Zimmerman for each such arbitration;

10.     by execution of these Stipulations and submission of them to this Court, Liquidating Trustee releases Fergus and Adriana of any claim, (as this term is defined in 11 U.S.C. § 101(5)), known or unknown, that the Liquidating Trustee has or may have against Fergus or Adriana or both of them;

11.     by execution of these Stipulations and submission of them to this Court, Fergus and Adriana release Liquidating Trustee, any and all past or present members of the Trust Advisory Committee

(established pursuant to the Plan) and the Liquidating Trust of any claim (as this term is defined in 11 U.S.C. § 101(5)), known or unknown, that Fergus and/or Adriana has or may have against Liquidating Trustee, any and all past or present members of the Trust Advisory Committee, and/or the Liquidating Trust, save and except as expressly set forth in the Plan and/or in this Order;

12.     upon the distributions under the Plan and this Order to Fergus and Adriana, Fergus and Adriana and any successor or assign shall not have any claim of any kind or nature against (i) the probate estate of Minnie Lee Ginther or Noble C. Ginther, Sr., (ii) the Grantor Trusts established by Noble C. Ginther, Sr. and Minnie Lee under the Fifth Amended Restated Revocable Trust Agreement, dated April 7, 1989, and/or (iii) the Ginther GST Exemption Trusts established by Noble C. Ginther, Sr. and Minnie Lee Ginther under document dated April 7, 1989 and , (iv) any legal representative of any of the aforementioned estates and trusts, save and except for any claim against Advent Trust Company or NationsBank, N.A.;

13.     Fergus is given leave to withdraw his vote against and objection to the Plan and to vote for the Plan; and

14.     by execution of these Stipulations and submission of them to this Court, Liquidating Trustee, Fergus and Adriana consent and agree to submit any dispute or disagreement regarding this Order and any provision thereof solely to this Court for adjudication; including but not limited to any dispute or disagreement regarding any interpretation of any provision of this Order, and they further agree that this Court may issue and/or enter such writs, orders and other process as may be necessary to enforce any provision of this Order or the Plan, exercising its jurisdiction over the parties to these Stipulations and the subject matters of this Order and the Plan to the fullest extent permitted by law.

SIGNED on this 5th day of June , 2002.

William Greenklee

WILLIAM GREENDYKE
UNITED STATES BANKRUPTCY JUDGE

TRUE COPY I CERTIFY
ATTEST:   JUN 0 3 2005
MICHAEL N. MILBY, Clerk of Court
By Dru Acalthy
                        Deputy Clerk

4

Agreed to and Entry Requested:

Charles E. Long
Morris, Lendais, Hollrah & Snowden, P.C.
1980 Post Oak Boulevard; Suite 700
Houston, Texas 77056
Attorney for Lisa Lee de Montaigu, Liquidating Trustee

Berry D. Bowen
3333 West Alabama, Suite 100
Houston, Texas 77098
Attorney for Fergus M. Ginther, Sr., a/k/a Fergus M. Ginther and Adriana N. Ginther


MEMBER OF CLASS 6:


_____
Fergus M. Ginther, Sr.
728 Longbend
Galena, Missouri 65656


_____
Noble C. Ginther, Jr.
4 Rocky Lane
Houston, Texas 77040


_____
E.L. Ginther
Brown's Book Store
1517 San Jacinto
Houston, Texas 77002


_____
Marilyn Ginther Orr
10627 Floral Park Dr.
Austin, Texas 78759

Agreed to and Entry Requested:


_____
Charles E. Long
Morris, Lendais, Hollrah & Snowden, P.C.
1980 Post Oak Boulevard; Suite 700
Houston, Texas 77056
Attorney for Lisa Lee de Montalgu, Liquidating Trustee


_____
Berry D. Bowen
3333 West Alabama, Suite 100
Houston, Texas 77098
Attorney for Fergus M. Ginther, Sr., a/k/a Fergus M. Ginther and Adriana N. Ginther


MEMBER OF CLASS 6:

_____
Fergus M. Ginther, Sr.
728 Longbend
Galena, Missouri 65656


_____
Noble C. Ginther, Jr.
4 Rocky Lane
Houston, Texas 77040


_____
E.L. Ginther
Brown's Book Store
1517 San Jacinto
Houston, Texas 77002


_____
Marilyn Ginther Orr
10627 Floral Park Dr.
Austin, Texas 78759

Agreed to and Entry Requested:


_____
Charles E. Long
Morris, Lendais, Hollrah & Snowden, P.C.
1980 Post Oak Boulevard; Suite 700
Houston, Texas 77056
Attorney for Lisa Lee de Montaigu, Liquidating Trustee


_____
Berry D. Bowen
3333 West Alabama, Suite 100
Houston, Texas 77098
Attorney for Fergus M. Ginther, Sr., a/k/a Fergus M. Ginther and Adriana N. Ginther


MEMBER OF CLASS 6:


_____
Fergus M. Ginther, Sr.
728 Longbend
Galena, Missouri 65656


_____
Noble C. Ginther, Jr.
4 Rocky Lane
Houston, Texas 77040

_____
E.L. Ginther
Brown's Book Store
1517 San Jacinto
Houston, Texas 77002


_____
Marilyn Ginther Orr
10627 Floral Park Dr.
Austin, Texas 78759

5

Agreed to and Entry Requested:


_____
Charles E. Long
Morris, Lendais, Hollrah & Snowden, P.C.
1980 Post Oak Boulevard; Suite 700
Houston, Texas 77056
Attorney for Lisa Lee de Montaigu, Liquidating Trustee


_____
Berry D. Bowen
3333 West Alabama, Suite 100
Houston, Texas 77098
Attorney for Fergus M. Ginther, Sr., a/k/a Fergus M. Ginther and Adriana N. Ginther

MEMBER OF CLASS 6:


_____
Fergus M. Ginther, Sr.
728 Longbend
Galena, Missouri 65656


_____
Noble C. Ginther, Jr.
4 Rocky Lane
Houston, Texas 77040


_____
F.L. Ginther
Brown's Book Store
1517 San Jacinto
Houston, Texas 77002

_____
Marilyn Ginther Orr
10627 Floral Park Dr.
Austin, Texas 78759

· 5

Sent by: DOUG FERRELL   7136040239                06/04/02  4:35PM   Job 652        Page 6/6
Received:  6/ 4/ 2;  2:07PM;        713  466 3859 => DOUG FERRELL;   #12
     04 Jun 02 03:15p      Amber Ginther                    (713) 466-3859        p.12
           JUN. 4.2002   2:25PM   MORRIS LENDAIS HOLLRAH & SNOWDEN          NO.308   P.6/6

Agreed to and Entry Requested:

_____
Charles E. Long
Morris, Lendais, Holrah & Snowden, P.C.
1980 Post Oak Boulevard; Suite 700
Houston, Texas 77056
Attorney for Lisa Lee de Montaigu, Liquidating Trustee

_____
Berry D. Bowen
3333 West Alabama, Suite 100
Houston, Texas 77098
Attorney for Fergus M. Ginther, Sr., a/k/a Fergus M. Ginther and Adriana N. Ginther

MEMBER OF CLASS 6:

_____
Fergus M. Ginther, Sr.
728 Longbend
Galena, Missouri 65656

_____
Noble C. Ginther, Jr.
4 Rocky Lane
Houston, Texas 77040

_____
E.L. Ginther
Brown's Book Store
1517 San Jacinto
Houston, Texas 77002

_____
Marilyn Ginther Orr
10627 Floral Park Dr.
Austin, Texas 78759

5